William S. BOYD, Appellant,

v.

TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.

No. 14633.

Court of Appeals of Texas, Austin.

July 2, 1986.

Rehearing Denied Sept. 24, 1986.

Hal Hemstreet, Staff Counsel for Inmates, Texas Dept. of Corrections, Sugar Land, for appellant.

Ronald Earle, Dist. Atty., Rhonda G. Hurley, Asst. Dist. Atty., Austin, On Appeal Only, for Texas Dept. of Human Services.

Jo Betsy Lewallen, Richard Crozier, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for Cheryl Ann Arriola.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

The trial-court judgment terminates the parental rights of William S. Boyd in his daughter Cheryl, a statutory action for involuntary termination having been brought by the Department of Human Services. Tex.Fam.Code Ann. § 15.02 (Supp.1986). We will reverse the judgment of the trial court as to Boyd while affirming the judgment in all other respects.

Section 15.02 permits the trial court to terminate a person's parental rights if it finds that "termination is in the best interest of the child" and, in addition, that the parent whose rights are in question has committed in reference to the child at least one of the eleven culpable acts set out in subsection (1) of § 15.02. *Both* such findings are essential to the judgment of termination; a finding that termination would be in the best interest of the child is insufficient standing alone. *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976). Moreover, both the general finding of "best interest" and the finding of particular culpable misconduct, must be established by "clear and convincing" evidence because of the importance of the rights in issue. *Id.*

In the present case, the Department alleged that termination was in the best interest of Boyd's child Cheryl and that Boyd had committed the culpable act set out in subsection (1)(E) of § 15.02, namely that Boyd had

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which *endangers* the physical or emotional well-being of the child....

(emphasis supplied). The trial court found that the evidence established both the general allegation of "best interest" and the specific allegation that Boyd had engaged in conduct that endangered the physical or emotional well-being of the child, or knowingly placed the child with persons who did so. Boyd appeals on a single point of error—that the latter finding is not supported by clear and convincing evidence. We will sustain his assignment of error.

We reiterate—a judgment terminating parental rights may not rest upon the sin-

gle finding that termination would be in the best interest of the child. That the trial court so found in the present case, from clear and convincing evidence, is insufficient without a concurrent finding from the same character of evidence that Boyd endangered the physical or emotional well-being of the child. Such is the law we are bound to follow. Tex.Fam.Code, *supra,* § 15.02; *Holley v. Adams, supra.* This remains true even though it may be that Cheryl's "best interest" may be harmed by her removal from her foster parents. Any official remedy for such unfortunate situations lies in legislation or administration. The remedy does not lie in our blinking at what is clearly the law we are given to enforce.

With these preliminary observations, we turn to Boyd's point of error to the effect that the trial court's finding, that Boyd endangered the physical or emotional well-being of the child, is not supported by clear and convincing evidence.

## THE "DANGER" REQUIRED FOR THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS UNDER THE TEXAS FAMILY CODE

■ Before one may judge the sufficiency of the evidence to support a proposition of fact, one must first consider and have a clear understanding as to *what the proposition is* that must be proved. Here, it is the proposition that Boyd

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which *endangers* the physical or emotional well-being of the child....

Tex.Fam. Code Ann. § 15.02(1)(E) (emphasis added). The operative word in the proposition is the word "endangers." Our first task then is to assign meaning to the word "endangers" as it is used in § 15.02(1)(E) of the Texas Family Code, which is the meaning intended by the Legislature. In our discussion of that matter, it will be more convenient to use the cognate "danger."

We have summarized in a footnote pertinent decisions of various Courts of Appeal that have applied the concept of "danger" utilized in § 15.02(1)(E) or in § 15.02(1)(D), the concept being expressed in almost identical language in the two subsections of the Texas Family Code.[1] One sees from our summaries of the facts pertinent to those decisions an outline of judicial understanding as to the intended meaning of the "danger" contemplated by the two subsections. It is clearly an actual and concrete

1. *Ervin v. Wichita County Family Court Services,* 533 S.W.2d 947 (Tex.Civ.App.1976, no writ) (Leaving children with a cousin for a day or two, although they suffered from coughs and colds, was insufficient to establish "danger" to their well-being.).

*Fletcher v. Travis County Child Welfare Dept.,* 539 S.W.2d 184 (Tex.Civ.App.1976, no writ) ("Danger" to children's well-being shown by evidence that one child was chronically malnourished, that another child was allowed to consume medicine that required emergency medical treatment, and that mother suffered from mental instability characterized by a pattern of erratic and irrational behavior.).

*In Interest of B.J.B.,* 546 S.W.2d 674 (Tex.Civ. App.1977, writ ref'd n.r.e.) ("Danger" to child shown by evidence that father fatally stabbed mother, the fact finder being permitted to infer emotional damage to children from their fears and anxieties experienced by them after the homicide.) (c.f. Holley v. Adams, discussed in the text.).

*In Interest of E.S.M.,* 550 S.W.2d 749 (Tex.Civ. App.1977, writ ref'd n.r.e.) ("Danger" to child shown by evidence that mother lived in adultery after bearing the child; that she was in jail three months for criminal trespass, and on other occasions served various jail terms for prostitution (twice), possession of marijuana, possession of narcotics paraphernalia, theft, and carrying a pistol, amounting to approximately seven to ten jail terms in all; the child had blue eyes and blond hair although the putative father was black; she was currently practicing as a prostitute; two previous children died in their cradles within 48 hours; she had used amphetamines, L.S.D., marijuana, and heroin; she smoked marijuana continuously while in possession of the child and used other illicit drugs as well; the child's babysitter "had her face eaten up with acid as a part of the battle between ... bike clubs"; mother's apartment "had been shot up;" etc.).

*Coleman v. Texas State Dept. of Public Welfare,* 562 S.W.2d 554 (Tex.Civ.App.1978, writ ref'd n.r.e.) ("Danger" to child shown by evidence of mother's immorality coupled with evidence of sexual and other physical abuse of the child, including abuse by the mother, and mother's threats on the life of the child.).

*Lane v. Jefferson County Child Welfare Unit,* 564 S.W.2d 130 (Tex.Civ.App.1978, writ ref'd n.r.e.)

("Danger" to child shown by evidence that father became violent and beat mother when she was pregnant with the child; he raped the mother in her eighth month of pregnancy; he continued the same violent acts after the child's birth and in the child's presence; he beat the mother and *her* mother on one occasion and on the same occasion jerked the telephone from the wall and "tore the place up [,] almost hitting the child when he threw a fan across the room;" a few days before the termination action was brought he came again to the "mother's home and threw some bricks or rocks through the window [,] shattering glass in all directions and almost injuring those in the house, including the child; he thereafter "tussled" with the mother in the yard where the child was playing, and ran off with the child; and he was arrested for robbery and was in prison at the time of trial in the termination action.).

*Crawford v. Crawford,* 569 S.W.2d 505 (Tex.Civ. App.1978, no writ) ("Danger" to the child shown by evidence that father was a violent man who had beaten mother and threatened her life on many occasions; he had beaten the child three different times, on each occasion leaving bruises; the father would, during his marriage to the mother, disappear for three to ten days, leaving the mother and child without food or transportation, requiring that she call others to obtain milk for the baby; on several occasions she and the child went without meals; appellant carried a gun most of the time and was recently in the hospital in consequence of stab wounds received in a fight; he could not hold a job; he was often found by the mother in the home, having passed out there with a syringe in his veins, on which occasions she would pull the syringe from his veins "so the child wouldn't find out"; and, the father had threatened the mother in language stating that he hoped she could stand the mental strain he was going to impose on her, in addition to calling her a whore and stating that he would testify that she was "gay" in addition to other threats connected with the termination proceeding.).

*Wray v. Lenderman,* 640 S.W.2d 68 (Tex.App. 1982, no writ) ("Danger" shown by evidence of father's two burglaries and resulting imprisonment; he had been jailed six to seven other times and had a "long criminal record"; he had a serious alcohol problem that once required his admission to Rusk State Hospital; the drinking problem was not good for the child's emotional health; the father used illegal drugs, the mother testifying that he had been rendered unconscious from an overdose at home; he had a violent temper and beat his former wife; he could not keep a job and could not pay rent so that the family had frequently to move from house to house; he disappeared from time to time without advising the family of his whereabouts; he acknowledged that the child's visits with him in prison caused damage to the child's emotional health; and, he requested such visits nevertheless.).

*G.W.H. v. D.A.H.,* 650 S.W.2d 480 (Tex.App.1983, no writ) ("Danger" to daughter shown by evidence of father's current imprisonment for the murder of a young woman whom he strangled; he "used violence on females in general"; he had been arrested for rape, had struck his wife on several occasions, as well as his girlfriend; the police had been called on one occasion to control his misconduct; and he once held the child upstairs and refused to let her down until his wife came up to talk to him.). The dissent in the case points out divergent lines of cases in Texas regarding the issue of whether "danger" to the child required actual abuse of the child or whether it is sufficient that harmful conduct occurred even though not directed at the child. *In Interest of C.D.,* 664 S.W.2d 851 (Tex.App. 1984, no writ) ("Danger" to child shown by evidence that mother had been hospitalized over twenty times for mental illness and was on medication at time of trial; she had been violent in the past; and she was unable to care for the child.).

*Stuart v. Tarrant County Child Welfare Unit,* 677 S.W.2d 273 (Tex.App.1984, writ ref'd n.r.e.) ("Danger" to surviving child shown by evidence that siblings died at early age, one from "infant death syndrome" the other from severe burns sustained in a fire in the parents' camper; the family moved weekly in a camper truck, in which they drove from town to town selling tools at "flea markets"; the death of one of the siblings was attributable to the parents' negligence; the child showed evidence of being beaten before the fire in which she died; the parents displayed a "visible" lack of emotion at the child's death and reported a false surname for the child; they began packing the camper, preparing to leave, when a helicopter came for the dying child; they did in fact leave the State at that time; the child was "extremely" emaciated, weighing only seven and a half pounds even though she was three and one-half years of age, and her teeth were loose; the parents never checked on her condition after she was taken from the scene of the fire, although the father evidently called there under an assumed name two days afterwards; the surviving child was, in the opinion of an expert witness, "a particularly fearful child"; the surviving child stated that his parents would punish the dead child by pinning her in a towel so she could not move; and the surviving child acted in a suspicious manner regarding the role of his parents in the death of the child who was burned to death.).

*In Interest of Guillory,* 618 S.W.2d 948 (Tex.App. Civ.1981, no writ) ("Danger" to child shown by evidence that the child lived with mother in a building similar to a trailer house, in the back of a wrecking yard; two people living with the child and the mother offered visitors glue to sniff; the smell of glue in the dwelling would "knock you down;" the child's physical condition at the time of the visit was characterized by a very wet diaper, dirty hair, a flaking scalp,

threat of *injury* to the child's emotional or physical well-being; conversely, as illustrated vividly by the opinion of the Supreme Court in *Holley v. Adams, supra,* it is *not* a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. Moreover, the "danger" must be established as an independent proposition and is not inferrable alone from evidence of parental misconduct. Stated another way, it is not enough to show parental misconduct without *also* showing by the evidence that such misconduct *causes* or *allows* a resulting threat of injury to the emotional or physical well-being of the child. This is clearly indicated by the Supreme Court's opinion in *Holley* where it considers several kinds of misconduct by the mother and with respect to each holds that no evidence tends to show that the misconduct resulted in "danger" to the child:

> There was no evidence of any nature that the infrequency of the contacts [between the mother and the child] endangered the child's emotional well-being in any way. Similarly, there was no evidence that Nanci's visits with her son endangered his emotional well-being in any way. The trial court also may have based its conclusion that Nanci Holley endangered the emotional well-being of her child upon the conduct previously recited that appeared to cast doubt on her competency as a parent: her arrest in 1969 for a traffic offense, her commitment to the Austin State Hospital by her mother for less than two months; her conduct while traveling to Seattle; her second divorce; and her voluntary declaration of bankruptcy. *Again, however,* there was no evidence of any nature that *David Christopher's emotional well-being was endangered by this conduct in any way.*

544 S.W.2d at 370–71 (emphasis added). Now it may be that parental misconduct so clearly implies "danger" to the child, in logic and experience, that evidence of the misconduct itself also proves the "danger." Several of the decisions summarized in the footnote are of that character. That is not the case under the present evidence.

## THE EVIDENCE OF "DANGER" IN THE PRESENT CASE

As in *Holley v. Adams, supra,* we find there is no evidence to establish that the child was ever in danger or ever will be in danger for any reason; *a fortiori,* there is no evidence of any such danger attributable to Boyd's conduct, insofar as this record shows. We therefore hold there is no clear and convincing evidence in that respect.

What the evidence does show may be summarized as follows: The child's mother, Barbara Arriola, voluntarily and formally relinquished her parental rights in the child; Boyd was convicted of two burglaries, the circumstances of which are not shown, in consequence of which he was in jail when the child was born and was recommitted to jail after being released about nine months; while released from jail, he lived six months with the mother and child, at an aunt's house, but after an argument the mother moved out with the child; and he is presently in prison and has about two years remaining on his five-year sentence. There is much evidence favorable to Boyd's position in the case, but we here consider only the evidence favorable to the trial court's finding that Boyd's conduct exposed the child to danger or allowed the child to be so exposed.

■ There is no independent evidence in the case that anything Boyd did or failed to

---

and a cough; the mother admitted she could not care for the child "right now, because her [the mother's] head was out of shape"; the mother bore the child when she was placed on probation for possession of heroin; she used drugs, could not keep a job, and refused a permanent place to live; and she continued to use drugs after the child's birth and was thereafter incarcerated for aggravated robbery.).

*Bryant v. Hibbert,* 639 S.W.2d 718 (Tex.App. 1983, no writ) ("Danger" shown by evidence that mother lived with boyfriend under circumstances of prostitution, pandering, sexual abuse of one child by the boyfriend in the presence of the other child, drugs, firearms, thefts, and arrests, and mother lacked motivation or courage to change the circumstances or remove the children from them.).

do resulted in any danger to the child in the sense contemplated by § 15.02(1)(E). Particularly, there is no evidence suggesting that his imprisonment or his two burglaries posed such a danger.[2] *Instead, the parties join issue on what is really a question of law.* The Department admits the general rule that mere imprisonment and the underlying criminal conduct do not, in and of themselves, constitute grounds for terminating parental rights under the Texas Family Code. But the Department would have us sustain the trial court judgment, which rests merely upon such evidence, by a rule which qualifies that general rule. The Department characterizes the qualifying rule as follows:

> Where imprisonment of a parent displays [sic] a voluntary, deliberate and conscious course of conduct, it qualifies as conduct which endangers the emotional well-being of the child.

In other words, the Department argues for a rule that the "danger" contemplated by § 15.02(1)(E) *may* be inferred from the fact of imprisonment alone, when such imprisonment is the result of a voluntary, deliberate, and conscious course of conduct by the prisoner.

We hold there is no such rule. Our reasons are as follows:

First, the rule, as stated, is fundamentally without meaning. By definition, almost all crimes for which imprisonment may be assessed require a culpable mental state that is voluntary, deliberate, and conscious, expressed in such equivalent statutory terms as "voluntary," "intentional," and "knowing." Tex.Pen. Code Ann. §§ 6.01(a), 6.02 (1974 & Supp.1986). It is highly doubtful that the Legislature intend-

ed a distinction in § 15.02(1)(E), of the Texas Family Code, based upon a culpable mental state that amounted only to "reckless" or "criminal negligence," the two other possible mental states contemplated by the Texas Penal Code Tex.Pen. Code Ann., *supra*, § 6.02. Nothing in § 15.02 of the Texas Family Code suggests such a distinction. Therefore, instead of "qualifying" the primary rule, that imprisonment and criminal conduct are *not*, in and of themselves, grounds for the termination of parental rights, the rule for which the Department contends would devour or render meaningless such primary rule. *C.f., H.W.J. v. State Department of Public Welfare*, 543 S.W.2d 9 (Tex.Civ.App.1976, no writ) (mere imprisonment does not constitute danger to the child, but if the parent's imprisonment *results from* a voluntary, deliberate and conscious course of conduct which *has the effect* of endangering the child, or if the imprisonment is *coupled with* such conduct, a finding of "endangerment" may be justified). One should observe that *H.W.J. presumes a showing that the child has been placed in danger* —it does *not* stand for the proposition that such danger is inferrable from the fact of imprisonment alone. Moreover, such a rule would be contrary to the holding in *Holley v. Adams, supra*, where the Supreme Court refused to infer a danger to the child from the parent's misconduct alone, when the proven misconduct did not by its very nature pose a direct threat of injury to the child's emotional or physical well-being.

Second, we find no substantial authority for the qualifying rule advanced by the Department. As we have just noted, the case of *H.W.J.* states a different proposi-

---

**2.** Normally, imprisonment is a factor bearing upon the establishment of certain other grounds set out in subsection 15.02(1)—for example, whether the parent's failure to be with his child is "voluntary," he being in prison, so that *abandonment* may be inferred from the want of contact with the child, a ground for termination under subsections 15.02(1)(B) and (C). *See e.g., Texas Department of Human Resources v. J.T.H.*, 700 S.W.2d 718 (Tex.App.1985, no writ). In some cases, imprisonment may be mentioned incidentally in reference to the underlying crim-

inal conduct, the issue being whether such conduct poses a risk of the danger mentioned in subsection 15.02(1)(E). For example, in *Clark v. Clark*, 705 S.W.2d 218 (Tex.App.1986, no writ), a finding of danger to the child's emotional and physical well-being, under subsection 15.-02(1)(E), was sustained based upon evidence that the father was imprisoned for the murder of his stepchild, a child borne by the same mother. *See also* the cases cited in footnote 1, *supra.*

tion entirely. The only other case cited by the Department is *In the Interest of Guillory,* 618 S.W.2d 948 (Tex.Civ.App.1981, no writ). The *Guillory* court does apparently state the rule for which the Department contends:

> Imprisonment of a parent, of and by itself, does not constitute conduct described by sub-paragraph (E) of section 15.02, ...; nevertheless, where it [sic] displays a voluntary, deliberate and conscious course of conduct, it qualifies as conduct which endangers the emotional well being [sic] of a child.

618 S.W.2d at 950. The *Guillory* court attributed this rule to *Allred v. Harris Cty. Child Welfare Unit,* 615 S.W.2d 803 (Tex.Civ.App.1980, writ ref'd n.r.e.) and *In the Interest of S.D.H.,* 591 S.W.2d 637 (Tex.Civ.App.1979, no writ). The latter decision merely quotes *H.W.J.* for the different proposition we have discussed above. The former decision in *Allred* does not fairly suggest the rule *Guillory* attributes to it because independent evidence in Allred showed a danger to the child and such danger manifestly was *not* inferrable merely from the fact of imprisonment alone. (Such independent evidence included a showing that the father beat the mother when she was pregnant with the child; he threatened to throw the mother downstairs in order to induce a miscarriage; he used and sold drugs; he stated that he did not intend to make a home for the child after his release from prison, but would leave the child with relatives; etc.).

■ It may be that the trial-court finding of "endangerment" in the present case is based upon evidence that the child once suffered from "sleeping disorders, some problems with constipation, that apparently were attributed to anal fissure due to some improper diet." However, this is no evidence of "endangerment" to the child because the only witness who referred to such matters prefaced and concluded his statement by saying: "I wouldn't say [they] endangered [the child]" and "I mean that's not being endangered." In addition, another witness stated that the child had "scabies" and was poorly disciplined, but

there was no evidence that these "endangered" the child because the same witness testified that the child was a "normal healthy child" and in "fairly good health," the "scabies" and want of discipline notwithstanding. In any event, none of these physical ailments where linked by any evidence to Boyd's imprisonment, conduct, or inaction. Consequently, we conclude such evidence amounts to no evidence, and certainly is less than clear and convincing evidence, of any danger to the child attributable to Boyd.

Therefore, we hold the trial court's finding to the contrary is not supported by any evidence, or alternatively that the evidence in that respect is not clear and convincing. We accordingly reverse the judgment below and render judgment that the Department take nothing by its suit against Boyd. We award Boyd his costs. In all other respects, the judgment of the trial court is affirmed.