**In the Interest of Amber KING, a Child.**

No. 06–99–00094–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 14, 2000.

Decided March 23, 2000.

J. Stephen Walker, Moore Law Firm, L.L.P., Paris, for appellant.

Kerye Ashmore, County Atty., Karla R. Baugh, Asst. County Atty., Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Richard Mason King, Jr. appeals from a judgment terminating the parent-child relationship between him and his daughter, Amber King. King contends the evidence is legally and factually insufficient to support the trial court's finding that he engaged in conduct that endangered Amber's emotional well-being. Because we find that the evidence is sufficient, we affirm the judgment.

King and Mechele Caldwell lived together in a purported common-law marriage in Paris, Texas, with their daughter, Amber. Caldwell's sister's children, Davis and Nikki Lindley, also lived with King and Caldwell, who were named conservators of the children at the request of the Texas Department of Protective and Regulatory Services. In October 1997, King was convicted of aggravated sexual assault of eight-year-old Nikki Lindley, and he is now serving a fifty-year prison term for that offense. After King's conviction, the Department took custody of the children, including Amber, who at the time was between twelve and eighteen months old. The Department already had filed suit seeking to terminate the Lindleys' parental rights to Davis and Nikki. On January 13, 1998, after King's conviction, the Department added to its suit an action against King and Caldwell to terminate their parental rights to Amber. The court severed the latter action into a separate suit, which proceeded to a final termination hearing before the court on May 17, 1999. After the hearing, the court terminated the parent-child relationship be- tween Caldwell and Amber, based on Caldwell's having filed an affidavit relinquishing her parental rights. The court also terminated the parent-child relationship between King and Amber. Only King has appealed the termination order.

■ Section 161.001 of the Texas Family Code governs the involuntary termination of the parent-child relationship. Pursuant to that section, a court may order termination of the parent-child relationship if it finds by clear and convincing evidence one or more of the statutory grounds set out in Section 161.001(1) and determines that termination is in the best interest of the child as required by Section 161.001(2). *See* TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2000). Here, the Department alleged that termination was proper under Section 161.001(1)(D) and (E). Subsection (1)(D) provides for termination where the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(D). Subsection (1)(E) provides for termination where the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(E). In its findings of fact and conclusions of law, the trial court found that termination was proper under Subsection 1(E), stating that King's conviction for sexually assaulting a child living in the home established by clear and convincing evidence that King engaged in conduct which endangered Amber's emotional well-being. As required, the court also found termination to be in Amber's best interests.[1]

---

1. The court mislabeled these findings as conclusions of law. Instead, they were findings of fact necessary to support the trial court's conclusion that King's parental rights should be terminated. *Lucas v. Texas Dep't of Protective and Regulatory Servs.*, 949 S.W.2d 500, 502 (Tex.App.-Waco 1997, pet. denied). We may treat findings mislabeled as conclusions of law as findings of fact. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n. 1 (Tex.1979). While we review conclusions of law *de novo*, we may review findings of fact for legal and factual evidentiary support. *Dallas Area Rapid Transit v. Dallas Morning*

King challenges the sufficiency of the evidence to support the trial court's conclusion that he engaged in conduct that endangered Amber's emotional well-being. Without defining it as such, King makes a legal sufficiency argument. He contends the evidence of his conviction for aggravated sexual assault of another's child is of itself legally insufficient to support a finding that he engaged in conduct that endangered the well-being of his own daughter. He argues that the Department must have presented some evidence demonstrating how his abusive conduct toward one child endangered Amber, who did not witness or otherwise know of the offense. King also makes a factual sufficiency argument. He contends that evidence of his conviction for sexually assaulting Nikki Lindley is factually insufficient to support the court's finding that his conduct endangered Amber's emotional well-being, because other evidence showed that he was a good father to Amber, and therefore the finding is so against the great weight of the evidence as to be clearly wrong and unjust. Based on these arguments, we will review the evidence for both legal and factual sufficiency.

 The natural right between parents and their children is one of constitutional dimensions. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976). For that reason, and because termination of parental rights is a drastic remedy, the evidence supporting a termination order must be clear and convincing. TEX. FAM.CODE ANN. § 161.001; *In re G.M.,* 596 S.W.2d 846, 847 (Tex. 1980). The clear and convincing standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. It requires "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

established." *In re G.M.,* 596 S.W.2d at 847.

 Citing *In re B.R.,* 950 S.W.2d 113 (Tex.App.-El Paso 1997, no writ), and *Neiswander v. Bailey,* 645 S.W.2d 835, 836 (Tex.App.-Dallas 1982, no writ), King contends that this heightened burden of proof at trial requires a corresponding intermediate standard of appellate review. *See In re B.R.,* 950 S.W.2d at 117–19; *Neiswander v. Bailey,* 645 S.W.2d at 835–36. However, in *In re J.J.,* 911 S.W.2d 437, 439–40 (Tex.App.-Texarkana 1995, writ denied), we declined to apply an intermediate standard on appeal, stating we were bound by *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975), a case in which the Texas Supreme Court expressly rejected an intermediate standard of appellate review. *See In re J.J.,* 911 S.W.2d at 439–40. In the case of *In re J.J.,* we noted that the rule of *Meadows* was formulated before the court's approval of an intermediate, clear and convincing standard of proof at the trial level. We also noted that the courts of appeals have disagreed on whether this intermediate standard of proof requires the application of a corresponding intermediate standard of appellate review. *See id.* at n. 1. The disagreement still persists. *Compare In re B.R.,* 950 S.W.2d at 117–19, *with In re K.R.,* No. 14–98–00118–CV, 1999 WL 672525, at *6 n. 1 (Tex.App.-Houston [14th Dist.] 1999, no pet. h.). However, still considering that we are bound by *Meadows,* we reassert our position that the clear and convincing standard of proof at the trial court level does not alter the fundamental standards of appellate review.

 A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). Accordingly, we review a legal sufficiency or "no evidence" point of error considering only

*News,* 4 S.W.3d 469, 473 (Tex.App.-Dallas 1999, no pet. h.).

the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregarding all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). We uphold the fact finder's determination if any probative evidence supports it. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). In conducting a factual sufficiency review, we view all of the evidence and will sustain a factual sufficiency challenge only if we conclude that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

■■■ King contends that, standing alone, his conviction for aggravated sexual assault of another's child is legally insufficient to support the trial court's finding that he engaged in conduct that endangered the well-being of his own daughter. He argues that the Department must have presented some evidence demonstrating how his conduct toward the other child endangered Amber, who did not witness or otherwise know of the assault. We disagree.

King is not the first parent to argue that danger cannot be inferred from parental misconduct alone but must be established as an independent proposition. *See In re W.A.B.*, 979 S.W.2d 804, 807–08 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Boyd v. Texas Dep't of Human Servs.*, 715 S.W.2d 711, 715 (Tex.App.-Austin 1986), *rev'd*, 727 S.W.2d 531 (Tex.1987). In *Boyd*, the State sought to terminate the parental rights of a father who was jailed for burglary just before his daughter was born and who, while on parole, intermittently held three different jobs before being convicted again for burglary and receiving a five-year prison sentence. The evidence was vague as to the nature and amount of support the father provided his child while he was on parole. *See Boyd*, 727 S.W.2d at 532–33. The court of appeals defined "endanger" as "danger" or as "an actual and concrete threat of *injury*

to the child's emotional or physical well-being...." *Boyd*, 715 S.W.2d at 713–15. The court held that parental misconduct is insufficient to establish endangerment, stating "it is not enough to show parental misconduct without *also* showing by the evidence that such misconduct *causes* or *allows* a resulting threat of injury to the emotional or physical well-being of the child." *Id.* at 715. However, the Texas Supreme Court expressly disapproved the court of appeals' holding that danger cannot be *inferred* from evidence of parental misconduct alone. *See Boyd*, 727 S.W.2d at 533. The Supreme Court redefined "endanger," stating,

> While we agree that "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Rather, "endanger" means to expose to loss or injury; to jeopardize.

*Id.* at 533 (citations omitted).

■■■ Here, the Department adduced evidence of King's conviction, to which King stipulated, for the aggravated sexual assault of a child who had been placed in King's home under his care and control. In this circumstance, it was not necessary to present independent evidence demonstrating how King's abusive conduct toward one child could have an effect on Amber. In other words, parental misconduct may be such that the trial court can infer a danger. *See Boyd*, 727 S.W.2d at 533. The aggravated sexual assault of a child living in the home with the child whose parental rights are in question is conduct that we may infer will endanger or jeopardize the well-being, both physical and emotional, of other children in the home who may discover the abuse or be abused themselves. Section 161.001(1)(E) does not require such actual injury before a parent's parental rights may be terminated. *See id.*

Here, there was evidence not only of King's conviction, but also that King's con-

duct placed Amber at risk for sexual abuse. Cindy Watley, a caseworker for Child Protective Services and Amber's caseworker, recommended that King's rights as to Amber be terminated based primarily on the fact that King had been convicted of sexually assaulting another child in the home. She testified that a parent or caretaker who is sexually offending or physically abusing a child in the home is not normally selective about the children he abuses and that such conduct places all children in the home at risk.

Another court of appeals interpreting Section 161.001(1)(E) has held that similar evidence of sexual abuse of one child living in the home and evidence that the conduct is likely to be repeated is sufficient evidence to support a finding of endangerment to other children living in the home. *See Lucas v. Texas Dep't of Protective and Regulatory Servs.*, 949 S.W.2d 500, 503 (Tex.App.-Waco 1997, pet. denied). Other courts of appeals have held that evidence of the abuse of one child is sufficient to support a finding of endangerment to other children. *See Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678–79 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.). In some cases, such evidence is sufficient even where the child is unborn at the time of the abuse. *See, e.g., Director of Dallas County Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 730, 733–34 (Tex.App.-Dallas 1992, no writ). In one case, such evidence was sufficient even where the abused children were not living in the home and the child was unborn at the time of the abuse. *See In re K.M.M.*, 993 S.W.2d 225, 228 (Tex.App.-Eastland 1999, no pet. h.).

We conclude that the trial court could reasonably have concluded that King, having been convicted for the aggravated sexual assault of a child living in his home and under his care, engaged in conduct that had the effect of endangering Amber's emotional well-being.

■ King also contends that the evidence of his conviction for aggravated sexual assault is factually insufficient to support the trial court's finding that he engaged in conduct that endangered Amber's emotional well-being. He points to the testimony of Cindy Watley, who said that during the year she monitored the case she observed King with Amber and believed that King seemed to love his daughter and seemed to be a good caretaker. She said she had never seen King abuse Amber. She also testified that when Amber was removed from the home, she was not in King's typical target age bracket, given King's history of abuse. However, Watley also testified that she had never seen King abuse Davis or Nikki, implying that her witnessing King abuse Amber was unnecessary to show that he had done so. She testified that although Amber was not in the same age group as Nikki, she would be concerned that King might harm Amber as she got older. Watley recommended that King's parental rights be terminated. She stated that she based her recommendation primarily on the fact that King had been convicted of sexually assaulting another child in the home. She testified that a parent or caretaker who is sexually offending or physically abusing a child in the home is not normally selective about the children he abuses and that such conduct places all children in the home at risk.

Considering the evidence as a whole, the evidence favoring not terminating King's parental rights does not greatly outweigh the evidence of King's conviction for aggravated sexual assault and Watley's testimony recommending termination. Thus, the trial court's finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

For the reasons stated, the judgment of the trial court is affirmed.

GRANT, J., concurs only in the result.