In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00142-CV


______________________________








IN THE INTEREST OF A.N.L., A CHILD








 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 00C0196-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Staci Lamb appeals the trial court's termination of her parental rights regarding her child,
A.N.L. The father Kenneth Lamb's parental rights was terminated, but he has not appealed. Lamb
argues the evidence was legally and factually insufficient to support the termination of her parental
rights. 

 Lamb delivered A.N.L. by cesarean section three months premature and weighing two
pounds one ounce on July 7, 1999. A.N.L., after three months in the hospital, was sent home with
Lamb on October 11, 1999. Approximately three months later, on January 18, 2000, Lamb took
A.N.L. to Arkansas Children's Hospital for surgery on her cleft palate. The hospital contacted the
Texas Department of Protective and Regulatory Services (the Department) and made a failure to
thrive report based on malnourishment. The Department removed A.N.L. from her parents' custody
on February 8, 2000. The trial court terminated Lamb's parental rights on July 16, 2001, based on
Tex. Fam. Code Ann. § 161.001(1)(D), (E) (Vernon Supp. 2002). 

 The State's parens patriae interest in preserving and promoting the welfare of the child and
the parents' liberty interests in their relationship with their child necessitate that the evidence
supporting a termination order must be clear and convincing. Tex. Fam. Code Ann. §161.001
(Vernon 1996 & Supp. 2002); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599
(1982); accord In re G.M., 596 S.W.2d 846 (Tex. 1980). Where clear and convincing evidence is
the standard of proof at the trial level, it does not alter the fundamental standards of appellate review. 
In re King, 15 S.W.3d 272 (Tex. App.-Texarkana 2000, pet. denied). We review a legal sufficiency
or "no evidence" point of error by disregarding all evidence and inferences contrary to the findings
and considering only the evidence and inferences that when viewed in their most favorable light,
tend to support the finding. Id. at 275-76. If there is any, more than a scintilla, of probative evidence
in the record to support the decision, we overrule the legal sufficiency complaint. See In re King's
Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

 We review a challenge to the factual sufficiency of the evidence by examining all of the
evidence in the record and setting aside the judgment only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. In re Johnson, 911 S.W.2d 437 (Tex.
App.-Texarkana 1995, writ denied). 

 The court may order termination of the parent-child relationship if the court finds by clear
and convincing evidence that the parent has engaged in one of the acts enumerated in Section
161.001(1) of the Texas Family Code and that termination is in the child's best interest. Tex. Fam.
Code Ann. § 161.001(1). Section 161.001, subsections (D) and (E) allow for termination if the
parent has: 

 (D) knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well-being of the child;


 (E) engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the
child; . . . .


Tex Fam. Code Ann. § 161.001(1)(D), (E).

 The Texas Supreme Court defined "endanger" to mean more than a threat of metaphysical
injury or the possible ill effects of a less-than-ideal family environment; it means to expose to loss
or injury, to jeopardize. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531 (Tex. 1987); see also
Hann v. Texas Dep't of Protective & Regulatory Servs., 969 S.W.2d 77, 82 (Tex. App.-El Paso
1998, pet. denied); Edwards v. Texas Dep't of Protective & Regulatory Servs., 946 S.W.2d 130, 138
(Tex. App.-El Paso 1997, no writ). Parental conduct may pose a danger to the child even though
the conduct is not directed explicitly at the child and actual injury does not result. In re M.C., 917
S.W.2d 268 (Tex. 1996). The Texas Supreme Court does not require a showing of a causal
connection between the parent's conduct and actual harm to the child. Boyd, 727 S.W.2d 531; In re
W.A.B., 979 S.W.2d 804, 808 (Tex. App.-Houston [14th Dist.] 1998, pet. denied).

 Under subsection (D), a parent's conduct in the home can create an environment that
endangers the physical and emotional well-being of the child. See In re W.S., 899 S.W.2d 772, 776
(Tex. App.-Fort Worth 1995, no writ); D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351 (Tex.
App.-Austin 1993, no writ); Smith v. Sims, 801 S.W.2d 247 (Tex. App.-Houston [14th Dist.] 1990,
no writ). Subsection (E) includes not only a parent's acts, but a parent's omissions as well. Dupree
v. Texas Dep't of Protective & Regulatory Servs., 907 S.W.2d 81, 83-84 (Tex. App.-Dallas 1995,
no writ). 

 In challenging the legal and factual sufficiency of the evidence under both subsections (D)
and (E), Lamb contends the State did not establish that A.N.L. was malnourished because of Lamb's
conduct, arguing that no prior or base line weight was supplied and that there was no proof weight
loss occurred while A.N.L. was in Lamb's custody. Lamb also argues that although the evidence
establishes some marihuana use by Lamb, the evidence does not establish it was taken while she was
aware she was pregnant or when she had custody of A.N.L. 

 The State was not required to establish that Lamb's conduct actually caused A.N.L.'s
malnourishment. It was required to establish only that Lamb's conduct, including both acts and
omissions, posed a danger to A.N.L., exposing A.N.L. to loss or injury. There was evidence of
A.N.L.'s special needs resulting from her premature birth and maladies, including a cleft palate. 
There was evidence Lamb failed to follow up on A.N.L.'s medical needs after she was discharged
into Lamb's care. Lamb failed to take A.N.L. for her set of immunizations due at four months of age,
failed to get the G-tubing the doctor ordered for A.N.L., failed to take A.N.L. in for follow-up visits
to have her weight checked, failed to take A.N.L. in for an emergency room follow-up appointment,
failed to get A.N.L. signed up with Women, Infants, and Children (WIC), (1) and failed to fill a
prescription for a special formula. There was evidence that once Lamb ran out of the special formula
provided to her, she reverted to regular formula. In addition, the feeding tube surgically placed in
A.N.L.'s abdomen was removed one month after A.N.L. was discharged, while she was in Lamb's
care.

 More specifically, there was evidence regarding Lamb's conduct in caring for A.N.L. while
A.N.L. was in the hospital and diagnosed as failing to thrive. The hospital staff noted that Lamb
slept through A.N.L.'s crying and that she did not finish feeding A.N.L. There was evidence Lamb
visited A.N.L. infrequently and briefly, choosing to sleep in the cold sale barn where her husband
worked instead of staying at the hospital with A.N.L. "despite being asked and urged on several
occasions by social workers and the specialty nurse to stay with [A.N.L.]."

 After the State took custody of A.N.L., the Department offered services to Lamb to help her
regain custody of A.N.L. Lamb did complete a psychological evaluation, but did not complete
counseling, homemaker services, parenting classes, or drug assessment and screening, although she
did begin to participate in the programs after the plan was changed to termination of parental rights. 
Although visits with A.N.L. were offered, Lamb did not visit A.N.L. on a regular basis. Lamb began
visiting A.N.L. once a month for an hour after the plan changed to termination. Lamb was late and
was under the influence of marihuana for the first permanency planning meeting, confessing she had
smoked marihuana the night before and testing positive for marihuana on that day. Lamb gave birth
to a son a short while before the trial and testified the Department told her it was going to take
custody of him because a trace of marihuana was found in her system when he was born. 

 The State also provided a chart of A.N.L.'s weight, taken by health professionals during
checkups, from A.N.L.'s birth to two months before Lamb's rights were terminated. This chart
included weights taken from October 11, 1999 to January 18, 2000, the three months Lamb had
possession of A.N.L. The chart shows that A.N.L.'s weight was stagnant during the time she was
in Lamb's possession. Patrick Casey, a doctor at Arkansas Children's Hospital, stated in a letter
detailing his concerns about A.N.L.'s situation that A.N.L.'s weight on admission on January 18,
2000, was "well less than the lowest normal for age or gestation corrected age." After A.N.L. was
removed and placed in foster care, A.N.L.'s weight began to increase steadily. Marty Patty, the foster
mother, testified that the day she took custody, A.N.L. began gaining six ounces a day. A.N.L. was
still considered a special-needs child at the time of the trial, weighing below the normal weight of
a two-year-old infant and still needing to undergo several surgeries. She had begun to tolerate some
soft foods, was beginning to walk, and was able to babble and make a few sounds, but did not have
the vocabulary of a normal two-year-old infant.

 The State provided more than a scintilla of evidence to support the finding that Lamb
engaged in conduct endangering the physical or emotional well-being of A.N.L. Therefore, the
evidence was legally sufficient to support the judgment. Lamb's first point of error is overruled.

 Next we consider the record as a whole. In addition to the consideration of the evidence cited
above, we consider the following evidence adduced at trial. Lamb completed a cardiopulmonary
resuscitation certification class and learned how to feed A.N.L. through her feeding tube before she
was allowed to take A.N.L. home from the hospital for the first time. Lamb testified that the feeding
tube came out when she lifted A.N.L. out of her swing and that she rushed her to the hospital to have
it replaced. Lamb testified that the doctor told her A.N.L. was doing better drinking from her bottle
and that it would be in A.N.L.'s best interest to leave the feeding tube out. Lamb said she was given
a special bottle with a long nipple, but A.N.L. did not like it and they used the Habermann feeder,
which A.N.L. liked better. 

 Lamb testified she went to WIC to pick up the prescribed formula, but WIC was out of it and
had to special order it. Lamb said she also special ordered the formula from other sources as well. 
She said that the orders were not filled until after the State had taken custody of A.N.L. and that she
had still been feeding A.N.L. the formula the hospital had sent home with her when she took A.N.L.
to the hospital for her surgery. She testified she talked to a doctor at a local hospital who told her
how to mix the formula she had so that it would be strong enough. Lamb testified that A.N.L. ate
every two to three hours and that she never forgot to feed her. 

 Melody Rettstatt, Lamb's mother, testified Lamb took exceptional care of her daughter. She
said that Lamb would ask for her help in feeding A.N.L. properly and that she would tell Lamb they
needed to see a doctor because A.N.L. was not taking in enough food because she kept spitting it up. 
She testified that Lamb had taken A.N.L. to the hospital and talked with a doctor about A.N.L.'s
difficulty in eating and that she had observed Lamb attempting to follow the doctor's instructions. 
Mindy Wolfe, Lamb's friend, testified Lamb always made sure A.N.L. had exactly what she needed,
including a clean environment and food. Wolfe testified that before they took A.N.L. to the hospital
for her surgery, A.N.L. was eating baby food and had gained quite a bit of weight since she was born.

 Jennifer Bigger, a legal worker with the Texas Department of Protective and Regulatory
Services, testified Lamb had been a very loving and attentive mother to A.N.L. during the visits.
Lamb testified that she asked to spend more time with A.N.L., but that she was not allowed to do
so. 

 Lamb testified she had completed her homemaking classes. Lamb testified she had attended
every parenting class but the last, and her absence at the last class was due to lack of transportation. 
She said she called the Department and told them she would be unable to attend due to lack of
transportation. She testified she had been unable to attend her follow-up counseling session because
she was hospitalized with a kidney infection. She said she called the Department to inform them of
the situation. Although she said she scheduled another follow-up appointment with the counselor,
she said she missed that appointment as well and never rescheduled. Lamb testified she had attended
Narcotics Anonymous (NA) meetings, but did not realize she needed proof of her attendance. Wolfe
testified she drove Lamb to NA meetings. She said that she had driven Lamb twelve to fourteen
times and that they had been going once or twice a week for about a month or a month and a half,
a few months before Lamb's new baby was born. 

 The judgment is not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Therefore, the evidence was factually sufficient to support the judgment. Lamb's
second point is overruled.

 Having found the evidence legally and factually sufficient to support the judgment based on 
Tex. Fam. Code Ann. § 161.001(1)(E) based on the evidence discussed above, we need not consider
whether the evidence was sufficient to support the judgment based on Tex. Fam. Code Ann.
§ 161.001(1)(D). We also need not consider Lamb's argument regarding the sufficiency of the
evidence of her use of marihuana because the evidence of other conduct was sufficient to support
the judgment. 

 The judgment of the trial court terminating Lamb's parental rights regarding A.N.L. is
affirmed. 





 Ben Z. Grant

 Justice


Date Submitted: February 22, 2002

Date Decided: March 26, 2002


Do Not Publish
1. Administered at the federal level by the Food and Nutrition Service of the United States
Department of Agriculture, WIC provides federal grants to states for supplemental foods, health care
referrals, and nutrition education for low-income pregnant, breast-feeding, and nonbreast-feeding
postpartum women, and to infants and children who are found to be at nutritional risk. Most state
WIC programs provide vouchers that participants use at authorized food stores. United States
Department of Agriculture Food and Nutrition Service
http://www.fns.usda.gov/wic/MENU/WHATIS/WHATIS.HTM (last visited Mar. 21, 2002).