NUMBER
13-05-063-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

IN THE INTEREST OF
C.G., A CHILD,   

 

    

 On appeal from the 36th District Court

of Bee County, Texas.

 

 

 

M E M O R A N D U
M   O P I N I O N

     Before Chief
Justice Valdez and Justices Castillo and Garza

     Memorandum Opinion by Chief
Justice Valdez

 

 








Appellants, Manuela Galarza and Rito Salas, Jr.,
challenge the legal and factual sufficiency of the evidence to support the
termination of their parental rights as to their minor child, C.G.  On appeal, appellants raise six issues, which
can be properly narrowed and addressed as two: 
(1), the evidence is legally insufficient to support termination under
Texas Family Code Sections 161.001 (D), 161.001 (E), and 161.001 (2); and (2)
the evidence is factually insufficient to support termination under Texas
Family Code Sections 161.001 (D), 161.001 (E), and 161.001 (2).  We affirm.

I. Background   

Appellants began dating in 1994 while Galarza was
married to Benito Buentello, Jr.  Galarza
and Buentello had three children:  C.B.,
M.J.B., and M.G.B.  Appellants then had
their first child, M.S., on March 25, 2000. 
On March 3, 2001, Child Protective Services (ACPS@) received a report alleging that Salas had sexually
abused C.B.  Jose Vallejo, a CPS
caseworker, investigated the complaint by interviewing the appellants, the
children, and other collateral witnesses. 
Vallejo concluded there was Areason to believe@ that
sexual abuse had occurred.  Apart from
that allegation, Salas was also accused of physically abusing Galarza in front
of the children.  Appellants and
Buentello voluntarily relinquished their respective parental rights as to the
four children on February 1, 2002, and the court signed the termination decree
on May 13, 2002.      








Appellants= second child, C.G., 
was born on September 10, 2002. 
In October 2003, CPS received a referral of Aneglectful supervision@
regarding C.G.  The referral stemmed from
appellants= failure to adhere to provisions of their prior
termination decree and voluntary relinquishments of their other children.  Although C.G. was not a party to the prior
decree or relinquishment, CPS alleges that their provisions also relate to
C.G.  Salas=s
alleged past acts of sexual and physical abuse deemed him a Asexual predator,@ which
according to CPS, should disallow him from having unsupervised conduct with any
children.  Further, Galarza allegedly
failed to provide for C.G.=s safety.  CPS
contended that Galarza maintained contact with Salas, which endangered C.G.=s well-being. 
Also, Maria Moreno, Salas=s mother, allegedly allowed Salas to take C.G. to
the park unsupervised while C.G. was living with her; Galarza left C.G. in
Moreno=s care for a few months in order to find work.  

On November 6, 2003, in a Temporary Order Following
Adversary Hearing, the Texas Department of Protective and Regulatory Services (ATDPRS@) was appointed Temporary Managing Conservator of
C.G., and appellants were appointed Temporary Possessory Conservators.  Appellants were ordered to complete mandatory
psychological exams, counseling, and classes in order to attempt to qualify to
regain custody of C.G. 

The State subsequently sought permanent termination
of appellants= parental rights to C.G.  On September 10, 2004, a jury found that the
grounds pled for termination were proven by clear and convincing evidence; more
specifically, that appellants Aknowingly placed or knowingly allowed the child to
remain in conditions or surroundings which endanger[ed] the physical or
emotional well-being of the child,@ and Aengaged in conduct or knowingly placed the child
with persons who engaged in conduct which endanger[ed] the physical or
emotional well-being of the child.@   Appellants= parental rights were terminated. 

II. Standard of Review

In parental termination proceedings, the State must
prove its allegations with clear and convincing evidence.  Tex.
Fam. Code Ann. ' 161.001 (Vernon 2002).  "Clear and convincing evidence" is
"'that measure or degree of proof which will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.'"  In
re C.H., 89 S.W.3d 17, 23 (Tex. 2002) (quoting State v. Addington,
588 S.W.2d 569, 570 (Tex. 1979)).            








III. Legal and Factual Sufficiency of the Evidence

When we review legal sufficiency, we must consider
all of the record evidence in a light most favorable to the party in whose
favor the verdict has been rendered, and indulge in that party=s favor every reasonable inference deducible from
the evidence.  See Formosa Plastics
Corp. U.S.A. v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  We disregard all contrary evidence that a
reasonable jury could have disbelieved.  See
City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005); In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002).

When reviewing a challenge to the factual
sufficiency of evidence, we must determine whether "the evidence is such
that a factfinder could reasonably form a firm belief or conviction about the
truth of the State's allegations."  In
re C.H., 89 S.W.3d at 25; see In re J.F.C., 96 S.W.3d at
266.  We consider whether the disputed
evidence is such that a reasonable factfinder could not have resolved the
evidence in favor of the finding.  In
re J.F.C., 96 S.W.3d at 266.  The
evidence is factually insufficient "if, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction." 
Id.

IV. Applicable Law








Before parental rights may be terminated, the
evidence must establish (1) a statutory ground for termination and (2) the
termination is in the best interest of the child.  Tex.
Fam. Code Ann. ' 161.001 (1), (2) (Vernon 2002).  An affirmative finding by clear and
convincing evidence satisfying any one of the subsections of section 161.001 of the Texas Family
Code is sufficient to terminate parental rights.  See In re S.F., 32 S.W.3d 318, 320
(Tex. App.BSan Antonio 2000, no pet.).  The two statutory grounds at issue here are
sections 161.001 (D) and (E). 

Under subsection (D), the court may order
termination of the parent‑child relationship if the court finds by clear
and convincing evidence that the parent has knowingly placed or knowingly
allowed the child to remain in conditions or surroundings which endanger the
physical or emotional  well‑being
of the child.  Tex. Fam. Code Ann.
' 161.001 (D).  Under
subsection (E), the court may order termination of the parent‑child
relationship if the court finds by clear and convincing evidence that the
parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well‑being
of the child.  Tex. Fam. Code Ann.
' 161.001 (E). 


V. Analysis

In conducting this analysis, we address appellants= legal and factual sufficiency challenges together
in reviewing sections 161.001 (D) and (E); thereafter, we examine whether the
State satisfied section 161.001 (2)=s Abest interests of the child@ test.  

A. Family Code Sections 161.001 (D) and (E) 

By their first and second issues, appellants argue
the evidence is legally and factually insufficient to sustain the termination
of their parental rights under Texas Family Code Sections 161.001 (D) and
(E).  The State contends that the
evidence is sufficient because of the following: (1) a history of family violence;
(2) the allegation of sexual abuse; and (3) appellants= refusal to adhere to the Family Service Plan
provided for by CPS.

1. Family Violence








Galarza alleged that several incidents of family
violence occurred during her relationship with Salas; the evidence addresses
three pertinent incidents.  On June 26,
2000, police officers went to appellants= residence to answer a domestic violence call.  Galarza accused Salas of strangling her;
however, Salas insists they only had a verbal confrontation.  On another occasion, Salas allegedly attacked
Galarza while she was holding one of her children.  Most notably, on November 29, 2000, Galarza
filed a police report alleging that Salas assaulted her in front of C.B. and
M.G.B.  On that day, Salas had refused to
take Galarza into town to pick up supplies. 
Galarza proceeded to walk to town with C.B. and M.G.B.  Salas then drove up to the three of them in
his car, stopped, put the children in the car, and then pulled Galarza=s hair and slapped her at least three times.  He threw her in the car and drove off.  Almost immediately, Salas became enraged and
slapped Galarza again.  He told her and
the children to get out of the car and then drove off.  When asked about the various incidents of
violence, Galarza testified that she knew Salas posed a risk to her and her
children. 

2. Allegation of Sexual Abuse








Salas was accused of sexually abusing his
step-daughter, C.B.  Salas denied the
allegation, and Galarza testified that she did not believe her daughter=s outcry.  Appellants
argue that no criminal charges were ever brought against Salas; therefore, it
was improper to terminate their parental rights.  However, witness testimony from Dora Montoya,
a former supervisor of the Bee County CPS office, implies that formal charges
were never brought against Salas because he and Galarza voluntarily
relinquished their parental rights in exchange for CPS not further pursuing its
sexual abuse investigation.  Neither
Galarza nor Salas refuted Montoya=s claim.  No
formal criminal charges were ever pursued against Salas because the children
were theoretically out of harm=s way. 
Galarza testified that the reason both she and Salas relinquished their
rights were so that CPS Awould stop hassling us.@  

3. Refusal to Adhere to Family Safety Plan

Appellants, especially Salas, failed to adhere to
many of the requirements of CPS=s Family Safety Plan.  The plan was developed and presented to
appellants in the hope they could redeem themselves of allegations of neglect
and be reunited with C.G.  In a Temporary
Order following an Adversary Hearing, the Court ordered appellants to comply
with certain conditions in order to regain custody of C.G.:  (1) psychological or psychiatric evaluations,
(2) counseling, (3) parenting classes, and (4) compliance with CPS=s safety plan. 
Salas was ordered to comply with other conditions as well:  (1) drug and alcohol assessments and testing,
(2) anger management classes/counseling, (3) sex offender counseling, and (4)
compliance with a MHMR treatment plan.

The record shows that Galarza successfully completed
most of her requirements. However, she failed to maintain a stable residence in
which to care for C.G.; the record shows Galarza lived a nomadic lifestyle,
moving between Beeville, Victoria, and Del Rio. 
Aaron Rhyne, a licensed psychologist who counseled Galarza, took issue
with the fact she could not settle in a Astable@ place.  At
the time of trial, Rhyne thought it would be difficult for Galarza to care for
C.G. because Ashe is not stable at this time in affording the
child housing.@    








In contrast, the evidence shows that Salas blatantly
failed to strictly adhere to his conditions. 
With regard to the psychological evaluation, he was ordered to complete
the evaluation on or before December 5, 2003; however, he did not complete it
until July 27, 2004, and offered no valid explanation for the long delay.  Also, Salas did not complete any of his
classes.  He blames CPS for failing to
schedule any appointments for him; he contends they were Aout to get@ him.   

a. Analysis under Section 161.001 (D)

Appellants contend they did not knowingly place or
allow C.G. to remain in conditions or surroundings which endangered her
physical or emotional well-being.  Under
section 161.001 (D) of the Texas Family Code, we must examine the time before
C.G.=s  removal to
determine whether the environment itself posed a danger to her well-being.  See Ybarra v. Tex. Dep=t of Human Servs., 869 S.W.2d 574, 577 (Tex. App.BCorpus Christi 1993, no writ); In re S.H.A.,
728 S.W.2d 73, 84 (Tex. App.BDallas 1987, writ ref=d
n.r.e.).  AEndanger@ means more than a threat of metaphysical injury or
the possible ill effects of a less-than-ideal family environment; it means to
expose to loss or injury, to jeopardize. 
Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re A.B.,
125 S.W.3d 769, 776-77 (Tex. App.BTexarkana 2003, pet. denied).  Thus, surroundings can endanger the
well-being of a child without the child suffering actual physical injury.  In re A.B., 125 S.W.3d at 777.








Being exposed to physical violence endangers a child=s well-being; likewise, and without question, sexual
abuse is conduct that endangers a child's physical or emotional well‑being.  See id. at 775; In re R.G., 61
S.W.3d 661, 667 (Tex. App.BWaco 2001, no pet.); In re King, 15 S.W.3d
272, 276 (Tex. App.BTexarkana 2000, pet. denied).  Parental knowledge that an actual offense has
occurred is not necessary; it is sufficient that the parent was aware of the
potential for danger and disregarded that risk. 
In re A.B., 125 S.W.3d at 775; In re R.G., 61 S.W.3d at
667‑68; In re Tidwell, 35 S.W.3d 115, 118 (Tex. App.BTexarkana 2000, no pet.).  We may infer that the aggravated sexual
assault of a child in the home is conduct which will endanger the physical and
emotional well‑being of other children in the home who may discover the
abuse or may be abused themselves.  In
re R.W., 129 S.W.3d 732, 742 (Tex. App.BFort
Worth 2004, pet. denied); In re King, 15 S.W.3d at 276.  Thus, Salas=s
alleged sexual abuse of C.B. created surroundings which endangered C.G.  Also, the fact that Galarza knowingly left
C.G. with Moreno, Salas=s mother, for several months endangered C.G. because
of the likelihood Moreno would allow her son access to C.G.  Moreno admitted to Montoya that she allowed
Salas to take C.G. to a park unsupervised. 
There is enough legal and factual sufficient proof to support the
finding by clear and convincing evidence that appellants knowingly placed or
knowingly allowed C.G. to remain in conditions or surroundings which endangered
her physical or emotional well-being.        


b. Analysis under Section 161.001 (E)              








Here, our inquiry, unlike that of section
161.001(D), focuses on conduct of either the parent or a person with whom the
parent has placed the children.  See
In re A.B., 125 S.W.3d at 777.  The
evidence under subsection (E) must show a "course of conduct," while
subsection (D) permits termination based on a single act or omission.  Id. 
We use the same definition of "endanger" as we do in our
inquiry under subsection (D).  That is,
we look for more than a threat of metaphysical injury or the possible ill effects
of a less‑than‑ideal family environment; we look for a course of
conduct which exposes the children to loss or injury or which jeopardizes the
children.  See Boyd, 727 S.W.2d at
533.  Here, we look not only at evidence
regarding the parent's active conduct, but also evidence showing the parent's
omissions or failures to act.  In re
A.B., 125 S.W.3d at 777.

Galarza and Moreno were well aware of the sexual
abuse allegations brought against Salas. 
Galarza=s placement of C.G. with Moreno for several months
represents a course of conduct which endangered C.G.=s well-being, given that Moreno allowed Salas to
have unsupervised visitation with C.G. 
The evidence reveals at least one incident where Moreno allowed Salas to
take C.G. to the park unsupervised.         


Examining all the evidence in the light most
favorable to the findings, we conclude that a reasonable trier of fact could
have formed a firm belief or conviction that the trial court=s enumerated findings were true.  See In re J.F.C., 96 S.W.3d at
266.  Furthermore, giving due
consideration to evidence that the factfinder reasonably could have found to be
clear and convincing, the evidence is such that the trial court reasonably
could have formed a firm belief or conviction about the truth of the
allegations against appellants.  See Tex. Fam. Code Ann. ' 101.007 (Vernon 2002); In re J.F.C., 96 S.W.3d at
266; In re C.H., 89 S.W.3d at 25. 
We conclude these enumerated findings are supported by clear and
convincing evidence.  Thus, appellants= legal and factual sufficiency challenges are
unfounded, and we overrule these issues on appeal.   

B. Family Code Section 161.001 (2)








Appellants also argue that the evidence is
insufficient to support the court=s finding that the termination was in the best
interest of C.G.  The best interest of
the child may be proven by the same evidence used to establish the occurrence
of the acts and omissions listed in section 161.001 (1) of the family
code.  In re C.H., 89 S.W.3d at
28.  Further, the Texas Supreme Court has
recognized several other factors that may be considered when determining
whether termination is in the child=s best interest: 
(1) the desires of the child, (2) the emotional and physical needs of
the child now and in the future, (3) the emotional and physical danger to the
child now and in the future, (4) the parental abilities of the individuals
seeking custody, (5) the programs available to assist these individuals, (6)
the plans for the child by these individuals, (7) the stability of the home or
proposed placement, (8) the acts or omissions of the parent which may indicate
that the existing parent-child relationship is not a proper one, and (9) any
excuse for the acts or omissions of the parent. 
Holley v. Adams, 544 S.W.2d 367, 371-372 (Tex. 1976).  This list, while instructive, is not
exhaustive.  Id.; see In re
C.H., 89 S.W.3d at 27.  Nor is
evidence of every factor required to form a strong conviction or belief that
termination is in the best interest of the child.  In re C.H., 89 S.W.3d at 27.      








Considering all the evidence of past family violence
and the allegation of sexual abuse coupled with the observance of a majority of
the Holley factors in this case, we conclude that the trial court could
have reasonably found that termination of appellants= parental rights is in the best interest of
C.G.  Appellants= conduct, especially Salas=s, raised concerns about several of the Holley factors.  As discussed above, Galarza failed to provide
C.G. with a stable home environment and failed to keep her away from
Salas.  Also, Galarza was unable to
provide the court with a plan for the future care of C.G.  Because of the past allegation of sexual
abuse, Salas posed a physical and emotional danger to C.G. and realistically
did not appear to be able to care for C.G.=s needs now or in the future.  His disregard for completing, much less
attending, any of his classes demonstrates a lack of adequate parental
abilities.  Much like Galarza, Salas also
did not have a plan for C.G.=s future.    

Viewing all evidence in the light most favorable to
the finding, we conclude it is legally sufficient to support the court=s finding that termination is in the child=s best interest. 
See In re J.F.C., 96 S.W.3d at 266.  Further, giving due consideration to evidence
that the factfinder could reasonably have found to be clear and convincing, we
also conclude that the evidence is factually sufficient to support the
finding.  See Tex. Fam. Code Ann. ' 101.007; In re C.H., 89 S.W.3d at 25; see
also In re J.F.C., 96 S.W.3d at 266. 
Appellants= issues are overruled.        

Conclusion

The judgment of the trial court is affirmed.

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

Memorandum
Opinion delivered and filed

this
26th day of January, 2006.