In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-536 CV


____________________



IN THE INTEREST OF N.N.S. AND J.D.L.S.






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B 990784-D






O P I N I O N


 This appeal is from the termination of the parental rights of Derek Shane Shinkle
to his children, N.N.S. and J.D.L.S. (1) Shinkle appeals raising six issues. Issues one
through five challenge the legal and factual sufficiency of the evidence to support the jury's
finding of termination under Tex. Fam. Code Ann. § 161.001 (1)(D), (E), (F), (N), or
(O) (Vernon 2002). Shinkle does not challenge the sufficiency of the evidence to support
the jury's finding that termination of his parental rights is in the best interest of the
children. See Tex. Fam. Code Ann. § 161.001 (2) (Vernon 2002). We first address
Shinkle's claim the evidence is legally and factually insufficient to support the jury's
finding that Shinkle engaged in conduct or knowingly placed his children with persons who
engaged in conduct which endangered their physical or emotional well-being. See Tex.
Fam. Code Ann. § 161.001 (1)(E) (Vernon 2002). 

 The record reflects Shinkle struck Longron when she was seven months pregnant
with N.N.S. The incident occurred in front of B.L., who was not yet two years old at the
time, and it "scared" him. (2) A girlfriend came to get Longron and when she arrived,
Shinkle picked her up and bodily threw her out of the house. 

 While Longron was pregnant with N.N.S. and staying with her grandmother,
Shinkle came over and tried to enter the house. Longron's grandmother tried to prevent
his entrance and Shinkle began screaming obscenities and tried to push his way through
the door past the grandmother. Shinkle was arrested for the incident. 

 When N.N.S. was a few days old, Shinkle and Longron's father got into a fist fight
in Shinkle and Longron's trailer. N.N.S. was in the trailer when the incident occurred. 
When N.N.S. was about four months old, Shinkle threw a car stereo speaker at Longron,
hitting her in the eye. A bone in her face was fractured and the whole side of her face was
swollen and discolored. Both B.L. and N.N.S. were in the house at the time and Longron
was pregnant with J.D.L.S. 

 Officer Elester Williams of the City of Orange Police Department responded to a
call made because Shinkle and Longron were involved in a fist fight in their living room. 
Shinkle hit Longron in the face. Shinkle grabbed Longron by both arms, bruising them,
and pushed her causing her to fall over the couch and strike her ankle on the coffee table. 
Officer Williams saw the bruise caused by the coffee table; it was approximately eight to
ten inches in size and was swollen and discolored. Longron told Officer Williams that
when she attempted to walk away from the fight, Shinkle began throwing things at her. 
She heard J.D.L.S. cry out and looked down, he had an injury near his left eye that she
assumed occurred when one of the objects thrown at her hit the child. J.D.L.S. was two
years old at the time. Longron told Officer Williams that she could not be sure J.D.L.S.
was struck by anything thrown at her. Officer Williams saw the cut and Longron testified
there was blood on J.D.L.S.'s face. B.L., N.N.S. and J.D.L.S. all witnessed the fight.
J.D.L.S. was upset and crying. 

 While on that call, police noticed a burn on B.L.'s face and asked if he had received
medical attention. He was then taken to the emergency room and hospital staff said he
should have been treated immediately for his injury. The injury occurred the day before
while B.L. was unsupervised in the backyard. He got into gasoline and other materials
that had been left there after Shinkle and his friends built a bonfire. The wood from the
bonfire was still smoking the next day when Ms. Mary Jo Smith of the Department went
to investigate. Shinkle admitted he had left the gasoline container in the backyard and that
B.L. was playing alone and unsupervised in the backyard when injured. Longron indicated
to Smith that she had not sought medical attention for B.L. because Shinkle had
outstanding warrants for his arrest and she feared he might be apprehended at the hospital. 
 Smith testified a river ran directly behind the back yard, there was no fence, and
there was obvious access to the river. Longron admitted there were alligators and snakes
in the water behind the house. Smith testified the three children, all under age four, if left
unsupervised could be in the water "in a heartbeat" with "death resulting." Longron
admitted the children should not have been left unsupervised around the water. As a result
of her investigation, Ms. Smith found neglectful supervision and medical neglect. 

 Longron obtained a protective order against Shinkle. Longron and the children
were staying with her grandmother and several times Shinkle came over and "was violent"
and "behaved violent" toward Longron with the children around. 

 Longron testified she and Shinkle always fought, admitted they fought and argued
in front of the children, and that they hit on one another. Longron testified that during an
argument, Shinkle "got a gun and shot at me." The gun was fired indoors. 

 On one occasion, when Longron and the children were living with a friend, Shinkle
came to the house and demanded Longron live with him. When she refused, he came into
the trailer. Longron's friend tried to help and Shinkle grabbed her and "almost threw her
completely through" a window. The window broke on her back and the friend had cuts
and bruises on her. Shinkle grabbed Longron by the hair and dragged her out of the
trailer, down the stairs, and through the gravel to the car. Longron's yelled she had called
the police and Shinkle let Longron go and fled. 

 Shinkle and his friends would get into fights in the yard. The neighbors often
complained because of the noise and the police responded to Shinkle's residence a "lot of
times." 

 Longron admitted the verbal and physical violence "always" upset the children and
that the children were fearful when they fought. Longron testified that B.L. would "freak
out" and N.N.S. and J.D.L.S. would cry. According to Longron, after a fight the children
would come to her and B.L. would try to comfort her. B.L. began hitting Longron and
throwing things at her because he had seen Shinkle do the same. 

 Shinkle used marijuana on a daily basis and the children were in the home when
Shinkle, Longron, and their friends used drugs. Shinkle sold drugs out the home while the
children were present and after the children were removed Shinkle tested positive for
marijuana. 

 Shinkle has a criminal conviction for felony possession, one for criminal trespass,
three for possession of marijuana, four for failure to maintain financial responsibility, two
for evading detention, one for escape, and one for state jail felony theft. As Shinkle's
brief recognizes, "his constant trouble with the law . . . resulted in his protracted
incarceration in county jail and state jail. . . . [Shinkle] was incarcerated for almost the
entire time of the Department's involvement in this case, with the exception of the time
from June 25, 1999 until October, 1999." 

 In deciding a legal sufficiency point, we consider only the evidence and inferences
supporting the trial court's findings and disregard all contrary evidence and inferences. 
Lucas v. Texas Dep't of Protective and Regulatory Serv., 949 S.W.2d 500, 502 (Tex.
App.--Waco 1997, writ denied). If more than a scintilla of evidence supports the trial
court's findings, the appealing parent can not prevail on a legal sufficiency point. In the
Interest of R.D., 955 S.W.2d 364, 368 (Tex. App.--San Antonio 1997, writ denied). In considering the factual sufficiency of the evidence to support the jury's findings,
"the appellate standard for reviewing termination findings is whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction about the truth of the
State's allegations." In the Interest of C.H., 45 Tex. Sup. Ct. J. 1000, 2001 WL 1903109,
*8 (Tex. 2002) (not yet released for publication).

 In his argument, Shinkle cites to evidence, without setting it forth, that the children
were "normal, happy and well adjusted for their age and circumstances." The evidence
detailed above is not countered, nor is any construction of it offered. The law does not
require that the danger to the children's well-being has been realized.

 In order for parental conduct to constitute endangerment of the children's
well-being, the conduct need not be directed at the children and the children
need not actually suffer injury. Rather, endanger means to expose to loss or
injury, to jeopardize. Further, the specific danger to the children's
well-being need not be established as an independent proposition, but may
be inferred from parental misconduct. Evidence of a parent's imprisonment
may also contribute to a finding that the parent engaged in a course of
conduct that endangered the children's physical and emotional well-being.


In re N.K., 54 S.W.3d 499, 504 (Tex. App.--Texarkana 2001)(citations omitted), vacated
and remanded on other grounds, 45 Tex. Sup. Ct. J. 1044, 2002 WL 1432813 (July 3,
2002)(not yet released for publication). More specifically,

 [w]hile subsection (E) endangerment must be a direct result of a parental
course of conduct, the conduct described does not have to be specifically
directed at the child; nor does it have to cause an actual injury to the child
or even constitute a concrete threat of injury to the child.. . . The parental
course of conduct includes both the parent's actions and the parent's
omissions or failures to act. See In the Interest of B.S.T., 977 S.W.2d 481,
484 (Tex. App.-Houston [14th Dist.] 1998, no pet.).


In re M.J.M.L., 31 S.W.3d 347, 350-51 (Tex. App.--San Antonio 2000, pet. denied). The
facts set forth above constitute "more than a scintilla" of evidence that Shinkle engaged in
a course of conduct that endangered the physical or emotional well-being of his children. 
Further, the evidence is such that a factfinder could reasonably form a firm belief or
conviction that Shinkle's conduct endangered his children's physical or emotional well-being. Accordingly, we find the evidence both legally and factually sufficient to support
the jury's finding to terminate Shinkle's parental rights to both N.N.S. and J.D.L.S. Issue
two is overruled.

 Where multiple grounds for termination are alleged and the trial court submits the
issue with a single broad-form question simply asking the jury whether the parent-child
relationship should be terminated, the jury's answer will be upheld if it is supported by any
of the grounds pleaded for termination. See Texas Dept. of Human Services v. E.B., 802
S.W.2d 647, 649 (Tex. 1990). Accordingly, it is unnecessary to address issues one, three,
four and five. 

 In issue six, Shinkle contends the trial court's charge to the jury was erroneous. 
Shinkle's brief refers us to a request made during the charge conference that the trial court
have the jury make a separate finding for each theory of termination. The Texas Supreme
Court has expressly approved broad-form submission in parental rights cases. See id., 802
S.W.2d at 649. The trial court's use of broad-form submission was not erroneous. Issue
six is overruled. The judgment of the trial court is AFFIRMED.

 PER CURIAM


Submitted on October 29, 2002

Opinion Delivered November 21, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. The parental rights of the mother, Melissa Longron, were also terminated as to
both children but she has not appealed.
2. B.L. is Longron's oldest child but not the child of Shinkle and therefore not part
of the termination proceeding at issue.